**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **CANDACE FOX, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 12-2706-CM |
| ) | |
| **TRANSAM LEASING, INC., et al.,** ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## MEMORANDUM AND ORDER

Named plaintiffs Candace Fox, Anthony Gillespie, and Charles Schreckenbach, individually and on behalf of others similarly situated, have filed a Motion for Class Certification (Doc. 68). Plaintiffs seek certification pursuant to Federal Rule of Civil Procedure 23 on Counts I, II, and III of their fifteen-count Class Action Complaint (Doc. 1). For the reasons stated below, the court denies class certification as to Counts I and II and grants class certification as to Count III.

**I. Background**

Plaintiffs and the putative class are independent truck drivers who own or lease motor vehicle equipment, namely semi-trucks, to defendant TransAm Trucking, Inc. (referred to herein as "TransAm Trucking"). TransAm Trucking is an interstate for-hire motor carrier engaged in the business of over-the-road transport of goods. TransAm Trucking has over 1,000 tractor-trailers and hauls interstate loads with no set or regular routes for its drivers. TransAm Trucking has both company drivers who are employees, and independent contractors, also known as "owner-operators," who provide their trucks and driving services to TransAm Trucking.

Defendant TransAm Leasing, Inc. (referred to herein as "TransAm Leasing") is a separate entity. TransAm Leasing's sole business is leasing semi-trucks to independent contractors who, in turn, lease

-1-

those trucks and driving services to TransAm Trucking (or some other motor carrier). The court sometimes refers to TransAm Trucking and TransAm Leasing collectively as "defendants."

### A. Operative Agreements

All owner-operators who wish to contract with TransAm Trucking sign a written Independent Contractor Agreement ("ICA"). According to plaintiffs, more than 3,000 putative class members signed substantially identical ICAs. (Doc. 69 at 4.) The ICAs set forth in a uniform way the framework for compensation that applies to each owner-operator. Defendants do not dispute the ICAs are identical in form but contend that the ICAs offer post-execution options (e.g., the option of purchasing different products, equipment, insurance and other services) that make the contracts different from each other. (Doc. 74 at 5.) The ICAs provide that the owner-operator determines the means and manner of performing under the ICA and that TransAm Trucking has no control or direction over the methods by which the owner-operator performs. The ICAs are considered leases under federal truth-in-leasing regulations because the contractor is considered to be leasing the truck and driving services to a motor carrier.

TransAm Leasing leases trucks to contractors under a written Equipment Lease Agreement ("ELA"). Many owner-operators lease a truck from TransAm Leasing, then turn around and lease that truck (and driving services) to TransAm Trucking. Like the ICAs, the ELAs are virtually identical in form, except the ELAs differ with respect to the trucks and lease terms, which results in varying lease payments among contractors.

### B. Plaintiffs' Allegations

Plaintiffs allege that defendants falsely marketed to owner-operators by claiming compensation of "over $138,000 per year on average," pay in the amount of "$40,000 more than company drivers over a four-year period," and "exceptional owner/operator benefits" including compensation "between

-2-

$100,000-$200,000 per year." (Doc. 69 at 6 (citing TransAm Trucking Marketing Materials)).) Plaintiffs further claim defendants represented to prospective drivers that drivers could earn such compensation by averaging 2,500 to 3,000 miles per week. (*Id.*) These representations were made via various marketing materials, including direct mailings and advertising on defendants' website. Plaintiffs contend these statements were deceptive and unconscionable in violation of the Kansas Consumer Protection Act ("KCPA"), K.S.A. §§ 50–626, –627, because plaintiffs and class members did not make the amount of money defendants promised.

Plaintiffs also allege that defendants violated 49 C.F.R. § 376.12(i), which prohibits lessors from requiring lessees to purchase from them products or services as a condition of entering into a lease. Under the ICA, each plaintiff and class member was required to pay a satellite communications system usage fee of fifteen dollars per week. Defendants counter that the fee is not a forced purchase but is instead a specifically authorized chargeback under 49 C.F.R. § 376.12(h).

## II. Analysis

Plaintiffs seek to certify the following class:

> All persons, including entities, who operated under an Equipment Lease Agreement and an Independent Contractor Agreement with TransAm Trucking, Inc. and TransAm Leasing, Inc. between November 2, 2009, through the present.

(Doc. 68 at 2.)

### A. Legal Standards

The determination of class certification is committed to the broad discretion of the trial court. *See Shook v. El Paso County* ("*Shook I*"), 386 F.3d 963, 967 (10th Cir. 2004). "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011)). The court is

required to perform a "rigorous analysis" before determining that the Rule 23 prerequisites have been met. *Id*. This "rigorous analysis" will frequently "entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 131 S. Ct. at 2251. In performing its analysis under Rule 23, the court "must accept the substantive allegations of the complaint as true, though it need not blindly rely on conclusory allegations of the complaint which parrot Rule 23 and may consider the legal and factual issues presented by [the] plaintiff's complaint[ ]." *Midland Pizza, LLC v. Sw. Bell Tel. Co.*, 277 F.R.D. 637, 639 (D. Kan. 2011) (quoting *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010)) (internal quotation marks omitted).

As the parties seeking class certification, plaintiffs have the burden to prove that the requirements of Rule 23 are satisfied. *See Shook I*, 386 F.3d at 968; D. Kan. Rule 23.1(d). In doing so, plaintiffs must first satisfy the prerequisites of Rule 23(a) by demonstrating that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). After meeting these requirements, plaintiffs must demonstrate that the proposed class action fits within one of the categories described in Rule 23(b).

### B. Rule 23(a) Requirements

#### 1. Numerosity

To satisfy the numerosity requirement of Rule 23(a)(1), plaintiffs must establish that the class is so numerous so as to make joinder impracticable. Fed. R. Civ. P. 23(a); *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). Plaintiffs must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved. *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978). Courts have found that a good faith estimate of at least fifty members is a

sufficient size to maintain a class action. *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 679 (D. Kan. 1991). Here, plaintiffs allege there are more than 3,000 independent contractors comprising the class. For purposes of class certification, defendants do not dispute that plaintiffs satisfy the numerosity requirement. The court finds that plaintiffs have established sufficient numerosity.

### 2. Commonality

Rule 23(a)(2) requires plaintiffs to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This inquiry requires the court to find only whether common questions of law or fact exist; unlike Rule 23(b)(3), such questions need not predominate under this element. *See Olenhouse*, 136 F.R.D. at 679. Plaintiffs contend the following issues are common to the class: (1) whether defendants made statements about compensation and mileage relating to owner-operators; (2) whether defendants' statements about compensation were unfair, deceptive or unlawful; (3) whether defendants' statements were unconscionable under the KCPA; and (4) whether defendants' contractual requirement that plaintiffs pay a satellite communications usage fee is lawful. (Doc. 69 at 18–19.) The court agrees that these are common issues, and defendants offer no argument to the contrary. The court finds that questions of law and fact are common to the class.

### 3. Typicality

Rule 23(a)(3) requires plaintiffs to show that their claims are typical claims of the class which they seek to represent. *See* Fed. R. Civ. P. 23(a)(3); *Stricklin,* 594 F.3d at 1198. The interests and claims of the representative plaintiffs and class members need not be identical to satisfy typicality. *See id*. (citing *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982)). A class representative "must be a class member, must have no interest antagonistic to those of the class, and must have suffered the same injury as the other class members." *Edgington v. R.G. Dickinson & Co.*, 139 F.R.D. 183, 189 (D. Kan. 1991) (citation omitted).

-5-

Defendants argue that the named plaintiffs' claims are not typical because plaintiffs' claims are, in part, based upon a recruiting video on defendants' website that the named plaintiffs did not see before they contracted with defendants. In fact, the video was not published until September 2011, which was after the named plaintiffs became independent contractors. (Doc. 74 at 18.) Defendants argue: "If someone has a KCPA claim based on those videos, it is not the named Plaintiffs." (*Id.* at 27.) However, the court does not believe this fact precludes a finding of typicality in these circumstances.

"[D]iffering fact situations do not defeat typicality so long as the claims of the representatives and class members are based on the same legal or remedial theory." *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 221, 229 (D. Kan. 2010) (citing *Stricklin,* 594 F.3d at 1198–99). Here, there are several different pieces of marketing materials on which plaintiffs rely to support their claims, and those other marketing materials contain some of the same representations the website video contains. That the named plaintiffs did not view the website video does not render their claims atypical given that defendants also made the alleged website misrepresentations in other marketing materials. The named plaintiffs' legal and remedial theories are the same as the putative class members, and the substance of the representations about which plaintiffs complain (income and mileage) are the same, notwithstanding from where the representations came. The court believes that plaintiffs' KCPA claims are typical of the class.

With regard to plaintiffs' claim that they were forced to pay an unlawful satellite communications fee, defendants offer no argument that the named plaintiffs' claim is atypical. Each independent contractor executed the same form ICA, containing the same provision at issue, and there is nothing to suggest that the named plaintiffs' claim is not typical. The court finds that typicality is satisfied.

-6-

### 4. Adequacy of Representation

A named plaintiff must show that he or she will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). To satisfy this requirement, the named plaintiffs must be class members and show that (1) their interests do not conflict with those of the class members and (2) that they will be able to prosecute the action vigorously through qualified counsel. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002).

In this case, there is no evidence that the named plaintiffs have any potential conflict with other members of the class, and defendants do not argue otherwise. Moreover, defendants do not dispute that plaintiffs' counsel is experienced and able to manage class action litigation. The court finds that the named plaintiffs will adequately represent the class.

### C. Rule 23(b)(3) Requirements

In addition to meeting the requirements of Rule 23(a), plaintiffs must satisfy the requirements of one of three qualifying tests under Rule 23(b) to maintain a class action. Here, plaintiffs seek to certify the class under Rule 23(b)(3),[1] which provides that a class action may be maintained if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule lists four factors pertinent to finding predominance and superiority: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Id.* at 23(b)(3)(A)–(D).

---

[1] Although plaintiffs requested injunctive relief in their Class Action Complaint, plaintiffs did not move to certify a class pursuant to Rule 23(b)(2).

-7-

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance requires more than a common claim; issues "common to the class must predominate over individual issues." *Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 690 (D. Kan. 2009) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008)). "The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 633–34 (D. Kan. 2008) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). If the proposed class members will need to present evidence that varies from member to member in order to make out a prima facie case, then it is an individual question. *Garcia*, 255 F.R.D. at 690 (citing *Blades*, 400 F.3d at 566; *Hydrogen Peroxide*, 552 F.3d at 311). However, if the same evidence will suffice for each member to make out a prima facie case, then it is a common question. *See id.*

### 1. Counts I and II: KCPA Claims

Plaintiffs have alleged that defendants violated the KCPA by making false representations about the amount of compensation plaintiffs would make as independent contractors. The representations plaintiffs contend are false are that defendants' independent contractors earn an average of over $138,000 per year, that owner-operators earn between $100,000 and $200,000 per year, and that defendants' drivers average between 2,500 and 3,000 miles per week.

To establish that plaintiffs and class members did not make the money they were promised, plaintiffs point to the amount of money earned by named plaintiff Charles Schreckenbach during the time he was an independent contractor. Plaintiffs contend that Schreckenbach repeatedly drove more than 1,000 miles per pay period, but "aside from occasional modest advances, [he] not only received no pay but was charged money for his effort." (Doc. 69 at 7.) According to plaintiffs, Schreckenbach

-8-

ultimately "drove almost 45,000 miles for Defendants in four months but made less than $5,000." (Doc. 1 ¶ 67.)

As evidence, plaintiffs attach as exhibits to their motion Schreckenbach's "settlement sheets," which are weekly statements TransAm Trucking sends to its contractors setting forth that contractor's revenue for the previous week, along with any advances and deductions. (Docs. 69–18 through 69–23.) Deductions on a settlement sheet could include the cost of various insurance products, reimbursement for cash advances to the contractor, or deposits by the contractor to an optional maintenance savings account. The entries included in the settlement sheets are not uniform from contractor to contractor because each drives a different number of miles and has different categories and amounts of deductions. Regarding plaintiff Anthony Gillespie, plaintiffs do not provide any settlement sheets but allege that he drove almost 31,000 miles in approximately three months but made less than $4,200. (*Id.* ¶ 68.) Plaintiffs do not allege in their Class Action Complaint or the instant motion the amount plaintiff Candace Fox earned, nor do they provide any settlement sheets for her.

Defendants respond, in part, by providing each of the named plaintiffs' gross income for the time period they contracted with defendants, and annualizing that gross income. According to defendants, the named plaintiffs earned the following:

| Plaintiff | Total Days | Total Days Off | Total Miles | Gross Pay | Annualized Gross Income |
|---|---|---|---|---|---|
| Fox | 113 | 32 | 35,225 | $43,338.26 | $139,986 |
| Gillespie | 269 | 60 | 92,980 | $121,581.93 | $164,972 |
| Schreckenbach | 163 | 22 | 56,189 | $71,456.03 | $160,009 |

(Doc. 74–10 at 2–4.) Defendants argue that the representations they made were about gross income, not net income, and that each of the named plaintiffs did in fact take home a gross pay that met, or exceeded, the amount set forth in their representations. Plaintiffs, on the other hand, assert that

-9-

defendants' statements about income regarded net income, not gross.  In any event, it matters not for these purposes, because whether defendants can be found liable under the KCPA requires individualized inquiries, rendering class certification improper.[2]

Defendants argue, correctly, that the issue of damages would require individualized inquiries.[3] The court is mindful that "[t]he possibility that individual issues may predominate the issue of damages ... does not defeat class certification by making [the liability] aspect of the case unmanageable." *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 674–75 (D. Kan. 2013) (quoting *In re Urethane Antitrust Litig.,* 251 F.R.D. at 633, 639).  The court also is aware that, to the extent ascertaining damages is unmanageable, the court could bifurcate liability and damages, at least where injunctive relief also is sought.  *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. at 238 ("Under these circumstances, the Court finds it appropriate to bifurcate the damage portion of plaintiffs' claims and certify a class under Rule 23(b)(2) with regard to the liability and injunctive aspects of plaintiffs' [KCPA] claims.").  However, before discussing damages, the court must look to the issue of proving liability.

Plaintiffs' claim under the KCPA is that defendants made representations that plaintiffs would earn a certain income but that, during the time plaintiffs were independent contractors, they did not earn that promised income.  To prevail on their KCPA claims, plaintiffs must prove that defendants' income- and mileage-related representations were false.  *Unruh v. Purina Mills, LLC*, 221 P.3d 1130, 1144 (Kan. 2009).  The only way to prove that the representations were false is to establish that each plaintiff did not earn the promised income, and to do that, a court or jury would have to determine what each independent contractor actually earned.

---

[2] The court renders no opinion at this juncture as to whether defendants' income-related statements regarded gross or net income.

[3] Defendants also argue that what advertising material each class member viewed, and how that may have impacted his or her decision making, is an individual inquiry.

-10-

Whether plaintiffs made the expected $138,000 per year can only be established by looking to each independent contractor's earnings. If a contractor earned the promised amount, then defendants did not violate the KCPA with respect to that contractor. In other words, for independent contractors who earned less than the promised amount, defendants could be liable under the KCPA. However, for those contractors who earned what they were promised, defendants cannot be liable under the KCPA. Determining liability under the KCPA in these circumstances requires individual proof of what each contractor actually made.

Indeed, not only would a finder of fact have to look to each class member's individual income to prove liability, that fact finder also would have to consider the wide array of factors that influence each contractor's net income. As defendants point out, contractors make a myriad of choices that impact how many miles they drive and, as a result, how much money they make, including (1) increasing their rate per mile through seniority, by becoming a driver coach (an increase of five cents per mile), or by taking quarterly safety classes; (2) taking themselves out of service for extended periods; (3) declining loads; (4) the use of speed governors; (5) efficient route planning; and (6) the number of trucks they have in operation simultaneously. (Doc. 74 at 31.) Independent contractors also make many decisions related to expenses, including (1) whether to utilize fuel optimization software; (2) what truck to lease and for how long; (3) where to purchase maintenance and repair services; (4) whether to use the maintenance savings account, and to what extent; (5) where to purchase insurance; and (6) whether to hire employees to provide driving services and what to pay those employees. (*Id.*) If plaintiffs are complaining about their net take-home pay, which they are, then these individual factors must be considered.

Moreover, the court points out that plaintiffs and defendants provide differing information with respect to how long the named plaintiffs contracted with defendants and how many miles they drove.

As previously noted, plaintiffs did not provide this information for plaintiff Fox. However, while plaintiffs allege Gillespie drove 31,000 in three months, defendants contend he was a contractor for almost nine months (269 days) and drove 92,980 miles. Similarly, while plaintiffs allege Schreckenbach drove 45,000 in four months, defendants contend he was a contractor for over five months (163 days) and drove 56,189 miles. These factual differences of opinion further highlight the individualized nature of determining each contractor's income, which is required to find liability under the KCPA,

In *Knight v. Mill-Tel, Inc.*, the plaintiff employees claimed that the defendant wrongfully withheld or deducted earned wages in violation of the Kansas Wage Payment Act ("KWPA"). No. 11-1143-EFM, 2013 WL 3895341, at *1 (D. Kan. July 29, 2013). The plaintiffs in *Knight* made no KCPA claim. The *Knight* court found common questions predominated because "all class members will point to deductions under a single compensation and deduction policy." *Id.* at *7. Plaintiffs in this case make a similar argument, that "plaintiffs' ICAs and ELAs uniformly establish the compensation framework necessary to measure damages." (Doc. 69 at 25.) However, plaintiffs' reasoning is ultimately flawed, as *Knight* is distinguishable from this case.

Here, plaintiffs are not claiming in Counts I and II that defendants' compensation and deduction policy is inherently unlawful; rather, plaintiffs claim that, after they began contracting with defendants, plaintiffs discovered that defendants had misrepresented the amount of income they would actually take home. In *Knight*, the court could examine the defendant's compensation policy and summarily determine whether it violated the KWPA; here, the court cannot look to the ICAs and ELAs alone to determine whether defendants violated the KCPA. Rather, whether defendants lied to plaintiffs about net income depends on each plaintiff's actual net income, which in turn is affected by the host of

-12-

factors detailed above.  Individual inquiries are necessary to establish whether defendants misrepresented how much money independent contractors would earn.

Furthermore, given the amounts of money to which plaintiffs claim they are entitled, it can be reasonably anticipated that the individual claims will involve substantial amounts of money.  As such, these plaintiffs have incentive to bring these claims individually.  Class treatment is not a superior method to resolve these disputes.  *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 679 (D. Kan. 2004) ("It can reasonably be anticipated that many of the individual claims will involve relatively insubstantial amounts of money such that a class action is perhaps the only feasible way for plaintiffs to pursue those claims.").

In light of the individual inquiries presented by plaintiffs' KCPA claims, the court finds that class certification of Counts I and II is not appropriate.  Plaintiffs have failed to show that common questions of law or fact predominate over individual questions.

### 2.  Count III: Satellite Communications Fee

The Federal Motor Carrier Safety Administration's truth-in-leasing law regulates truck leases. Lease and Interchange of Vehicles, 49 C.F.R. § 376.  In Count III, plaintiffs allege that defendants violated 49 C.F.R. § 376.12(i) by requiring them to pay a satellite communications system usage fee in the amount of fifteen dollars each week.  *See id.* § 376.12(i) ("The lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement."). Defendants explain that TransAm Trucking must pay a service provider for its satellite communications system, and it charges back the cost of that to its drivers. Defendants argue that this type of chargeback is specifically authorized by federal regulations, which permit items to "be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement."  49 C.F.R. § 376.12(h).

-13-

The satellite fee provision at issue is contained in the ICE that every independent contractor signs with TransAm Trucking, and the fifteen-dollar fee amount does not vary from contractor to contractor. As such, there is no individualized inquiry required to determine whether TransAm Trucking is liable under 49 C.F.R. § 376.12(i) for charging this weekly fee. Either the fee is legal, or it is not. The circumstances are the same for all putative class members—each was charged the satellite communications fee pursuant to the terms of the form ICE, and a determination of whether the fee in fact violates truth-in-leasing regulations does not require individual inquiries. Similar to *Knight*, the legal and factual questions related to whether this fee violates federal regulations require common proof and predominate over questions affecting individual members. *See Knight*, 2013 WL 3895341 at *7.

Plaintiffs also have satisfied the Rule 23(b) requirement of superiority with respect to this claim. Where individual claims are similar, a class action may be superior to discrete actions that could be "grossly inefficient, costly, and time consuming because the parties, witnesses, and courts would be forced to endure unnecessarily duplicative litigation." *Bennett v. Sprint Nextel Corp.*, No. 09-CV-2122-EFM-KMH, 2014 WL 1260111, at *11 (D. Kan. Mar. 27, 2014) (quoting *Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. at 679). Because plaintiffs' claims are substantially similar and common issues will predominate, the most feasible way for these plaintiffs to pursue their claims is by way of class action, thereby avoiding unnecessary and duplicative litigation. Accordingly, the court finds that a single class action is a preferable and superior method to resolve plaintiffs' claims that they were unlawfully charged a weekly satellite communications fee.

### D. Class Definition

An order certifying a class action must define the class. Fed. R. Civ. P. 23(c)(1)(B). The class definition is critically important because it identifies the persons (1) entitled to relief, (2) bound by a

final judgment, and (3) entitled under Rule 23(c)(2) to the best notice practicable in a Rule 23(b)(3) action. *In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598, 604 (D. Kan. 2012) (citing Manual for Complex Litigation § 21.222 (4th ed. 2005); Fed. R. Civ. P. 23(c)(1)(B)).  The definition must be precise, objective and presently ascertainable. *In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 444–45 (D. Kan. 2006).

Given the court's ruling to not certify plaintiffs' KCPA claims (Counts I and II) and to certify plaintiffs' truth-in-leasing claim (Count III), the court redefines the class as follows:

> All persons, including entities, who operated under an Independent Contractor Agreement that included a satellite communications system usage fee with TransAm Trucking, Inc. between November 2, 2009, through the present.

### E. Appointment of Class Counsel

Pursuant to Rule 23(c)(1)(B), an order certifying a class must appoint class counsel under Rule 23(g).  In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

Plaintiffs are currently represented by Richard F. Lombardo, Gregory Forney, Anne Smith, and Daniel Runion of the law firm of Shaffer Lombardo Shurin, P.C., and Gregory Leyh of Gregory Leyh, P.C.  Defendants raised no objection to the appointment of plaintiffs' attorneys as class counsel.  After reviewing the record, the court is satisfied that plaintiffs' attorneys meet the criteria of Rule 23(g) and will adequately represent the interests of the class as counsel.  Plaintiffs' counsel has significant experience in managing class and complex litigation.  Accordingly, the court will appoint plaintiffs' attorneys as co-lead counsel for this class action.

**IT IS THEREFORE ORDERED** that plaintiffs' Motion for Class Certification (Doc. 68) is granted as to Count III and denied as to Counts I and II.

**IT IS FURTHER ORDERED** that the court certifies a class under Federal Rule of Civil Procedure 23(b)(3) of the following:

> All persons, including entities, who operated under an Independent Contractor Agreement that included a satellite communications system usage fee with TransAm Trucking, Inc. between November 2, 2009, through the present.

**IT IS FURTHER ORDERED** that plaintiffs Candace Fox, Anthony Gillespie, and Charles Schreckenbach are designated as class representatives. Shaffer Lombardo Shurin, P.C., and Gregory Leyh, P.C. are designated as class counsel.

**IT IS SO ORDERED.**

Dated this 11th day of June 2014, at Kansas City, Kansas.

s/ Carlos Murguia  
**CARLOS MURGUIA**  
**United States District Judge**