**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

CANDACE FOX, et al.,                              )
                                                  )
                    **Plaintiffs,**               )
                                                  )
v.                                                )
                                                  )
TRANSAM LEASING, INC., et al.,                    )
                                                  )        **Case No. 2:12-cv-02706-CM-GLR**
                    **Defendants.**               )

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs oppose Defendants' Motion for Summary Judgment (Doc. 123) because Defendants are not entitled to judgment as a matter of law on any of Plaintiffs' claims—certified or uncertified.

### I.      INTRODUCTION

Plaintiffs Candace Fox, Anthony Gillespie, and Charles Schreckenbach, individually and on behalf of a Class of all others similarly situated, brought this action to recover for Defendants' violations of federal Truth-in-Leasing regulations and the Kansas Consumer Protection Act ("KCPA"). This Court certified a class of persons on Count III of plaintiffs' claims, which asserts the satellite communications system usage fee constitutes a violation of Truth-in-Leasing regulations.

This Court's Certification Order noted that plaintiffs alleged that defendants violated 49 C.F.R. § 376.12(i) by requiring them to pay a $15 per week satellite communications fee, while defendants claimed that the weekly fee is a "chargeback" specifically authorized by 49 C.F.R. § 376.12(h). (Doc. 80, at 13.) As this Court has previously stated with regard to the mandatory weekly $15 satellite communications systems usage fee, "[e]ither the fee is legal, or it is not."

(Doc. 80, at 14.) Plaintiffs and Class Members have moved for partial summary judgment on liability because Defendant TransAm Trucking unlawfully forced plaintiffs to purchase of satellite communications services through the $15 weekly satellite communications usage fee.

The scope of 49 C.F.R. § 376.12 is "[w]ritten lease requirements." 49 C.F.R. § 376.12(i) states that "[t]he lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement." Plaintiffs' claim is that the content of the ICA violates 49 C.F.R. § 376.12(i). The issue before the Court is not whether plaintiffs were forced to sign the ICA. The issue is whether the ICA violates 49 C.F.R. § 376.12(i).

Defendants now seek summary judgment on all claims—both certified and uncertified. As is more fully set forth in Plaintiffs' Rule 56(d) Motion to Stay Adjudication of Uncertified, Individual Claims Raised by Defendants' Motion for Summary Judgment, this Court should address Plaintiffs' and Class Members' claims in Count III of their First Amended Class Action Complaint regarding the satellite communications system usage fee first, before addressing Defendants' arguments regarding Plaintiffs' individual claims, which can be deferred to a later time in the interest of conserving judicial resources.

## II.   RESPONSE TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS

1.      TransAm Trucking is an interstate and intrastate for-hire motor carrier (US DOT No. 315503, Docket No. MC-197897). (Affidavit of Murray Droescher, Ex. A at 4.)

**RESPONSE**:  Uncontroverted.

2.      TransAm Trucking "leases" (as that term is defined by Truth-in-Leasing regulation) semi-tractors and driving services from contractors by entering into an ICA with each contractor. (Droescher Affidavit, Ex. A at 5.)

**RESPONSE**:  Uncontroverted.

3.      The ICA states:

Contractor owns and/or leases motor vehicle equipment and is engaged in the business of transporting freight by motor vehicle pursuant to long term arrangements with for-hire motor carriers; and … [TransAm Trucking] desires to lease Contractor's motor vehicle equipment and to obtain certain personnel services from Contractor from time to time, and Contractor desires to lease such motor vehicle equipment to [TransAm Trucking] and to make available such personnel services from time to time …

(ICAs, Ex. B at 1.)

**RESPONSE**:  Uncontroverted.

4.      The contractor agrees to:

[F]urnish to [TransAm Trucking] the motor vehicle equipment …. for the purpose of hauling freight from time to time pursuant to the terms and conditions of this Agreement. Such Equipment shall be furnished to [TransAm Trucking] on a schedule to be determined by Contractor.

(ICA, Ex. B at 1.)

**RESPONSE**:  Uncontroverted.

5.      A separate ICA is signed for each semi-tractor a contractor leases to Trans-Am Trucking. (Droescher Affidavit, Ex. A at 6.)

**RESPONSE**:  Uncontroverted that the ICAs are "separate" but each ICA is identical in content to other ICAs.

6.      The ICA states contractors:

shall determine the method, means and the manner of performing Contractor's obligations pursuant to this Agreement and shall be responsible to [TransAm Trucking] for the performance of this Agreement in accordance with the rules and regulations of appropriate regulatory agencies.

(ICA, Ex. B at 20.)

**RESPONSE**:  Uncontroverted.

7.      As required by Truth-in-Leasing regulation 49 C.F.R. § 376.12(i), the ICA states, "Contractor is not required to purchase or rent any products, equipment, or services from Carrier or Carrier's affiliates as a condition of this Agreement." (ICA, Ex. B at 18.)

**RESPONSE**:  Objection. Whether the ICA meets the requirements of Truth-in-Leasing regulations is a legal question for a court. This "fact" does not comply with Local Rule 56.1(a) in that it is not a concise statement of a material fact as to which the movant contends no genuine issue exists. Further, the "fact" does not comply with Local Rule 56.1(a) in that it does not refer with particularity to any portion of the record upon which movant relies. Without waiving this objection, Plaintiffs admit that the ICA contains the quoted language and further state that the quoted language is contradicted by other language in the ICA (see paragraph 1(b) of ICA). Plaintiffs do not admit and controvert that the quoted language suffices to meet TransAm Trucking's obligations under 49 C.F.R. § 376.12(i).

8.      All the named Plaintiffs signed ICAs in August 2011. (ICAs, Ex. B, C and D.)

**RESPONSE**:  Uncontroverted.

9.      The named Plaintiffs obtained their semi-tractors from another company affiliated with TransAm Trucking called TransAm Leasing, Inc., by entering into an ELA with TransAm Leasing. (ELAs, Ex. E, F and G.)

**RESPONSE**:  Uncontroverted.

10.     Equipment leases are not governed by Federal Truth-in-Leasing regulations.

**RESPONSE**:  Objection. Whether an equipment lease is subject to federal Truth-in-Leasing regulations is a legal question for a court. This "fact" does not comply with Local Rule 56.1(a) in that it is not a concise statement of a material fact as to which the movant contends no genuine issue exists. Further, the "fact" does not comply with Local Rule 56.1(a) in that it does

not refer with particularity to any portion of the record upon which movant relies.

<b>Settlements</b>

11.     TransAm Trucking contractors are paid by settlements. (Deposition of Murray Droescher, Sept. 9, 2013, Ex. H at 105-106.)

**RESPONSE**:  Uncontroverted.

12.     Settlement statements show revenue for all trip paperwork turned in the previous week. (Droescher Deposition, Sept. 9, 2013, Ex. H at 105-106.)

**RESPONSE**:   Uncontroverted that settlement statements, such as the one attached as Exhibit I to Defendants' Motion for Summary Judgment, contain the word "revenue" on them. Settlement statements appear to more appropriately contain information regarding amounts due to contractor based upon mileage driven, expenses reimbursed, and charges. Settlement statements also depict an amount due owner (whether positive or negative). Whether "revenue" as it appears on settlement statements actually constitutes "revenue" in the typical accounting sense of the word or under IRS definitions is disputed.

13.     As to settlement statements, the ICA states:

> In consideration for furnishing the Equipment and the provision of the personnel services as specified herein, [TransAm Trucking] shall pay to Contractor the compensation described in Exhibit C … All such payments to Contractor and any applicable deductions shall be reflected in an operator's settlement which [TransAm Trucking] shall produce both on a weekly basis and as a final statement showing termination of this Agreement ("Settlement")…

(ICA, Ex. B, at 3.)

**RESPONSE**:  Uncontroverted.

14.     In the ICA, Contractors authorize certain deductions from their settlements, including for any insurance or other products they choose to purchase through TransAm Trucking. (ICA, Ex. B at 1, 4, 9, 14, 15.)

**RESPONSE**:  Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

15.    All deductions are clearly enumerated on settlement statements. (Droescher Affidavit, Ex. A at ¶ 7; Settlement Statement, Ex. I; Report of John Pinckney, Ex. J at 9.)

**RESPONSE**:  Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

16.    The Plaintiffs hired an expert to opine on any Truth-in-Leasing violations by TransAm Trucking, and he could not identify any charge in any settlement statement not specified in the ICA. (Pinckney Report, Ex. J at 9; Deposition of Whitney Morgan, Ex. K at 28-31.)

**RESPONSE**:  Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

Subject to and without waiving the foregoing objection, Plaintiffs and Class Members controvert the statement in that Defendants apparently do not differentiate between "charges"

and actual charge amounts, which are required to be but are not actually found in the 11-page ICA itself. With respect to the satellite claim, it is not a matter of whether or not the charge was disclosed to Plaintiffs and Class Members; rather, it is a matter of whether the charge was a forced purchase in violation of the Truth-in-Leasing regulations. The referenced page of Mr. Pinckney's report discusses charge-backs, not forced purchases.

Plaintiffs and Class Members further controvert that, with respect to the satellite communications system usage fee, Mr. Morgan did not have any opinions. On page 5 of Mr. Morgan's report, he states "The requirement of a satellite communications system usage fee is in violation of FMCSRs § 376.12(i) because it requires the lessor to purchase a service from TransAm. This provision is found in Paragraph 1(b) of the lease, and sets forth that regardless of whether the contractor furnishes their own satellite unit or TransAm gives them one, contractor has to pay TransAm a $15.00 per week fee to use the satellite system." (See Exhibit A, Report of Whitney Morgan.) Similarly, the referenced pages of Mr. Morgan's deposition do not present the whole truth as to his testimony regarding the satellite communications system usage fee and his opinions regarding the same. Like with his report, Mr. Morgan testified that it is his opinion that the satellite communications system usage fee violates § 376.12(i). (See Exhibit B, Deposition of Whitney Morgan, December 20, 2013, at 32-35.)

**Satellite Communications System**

17.     TransAm Trucking has paid and continues to pay hundreds of thousands of dollars to third parties for a satellite communications system specific to semi-tractor trailers. (Droescher Affidavit, Ex. A at 8.)

**RESPONSE**:  Uncontroverted, but irrelevant. Also, Plaintiffs would note that this system is used for both independent contractors **and** TransAm Trucking's company drivers, who are

presumably not subject to the weekly satellite communications system usage fee, as is seen with the next statement.

18.     The system is used by TransAm Trucking's drivers (including contractors) to effectively and efficiently plan routes; verify compliance with Federal Motor Carrier Safety Regulations (FMCSRs) on, among other things, hours of service; automate fuel tax reporting; monitor the temperature of refrigerated loads; and communicate with dispatch, particularly when ready for duty, accepting a load, loading, or unloading. (Droescher Affidavit, Ex. A at 9; Pinckney Report, Ex. J at 10.)

**RESPONSE**:  Uncontroverted, but irrelevant.

19.     The first page of the ICA states that $15 per week will be deducted from a contractor's settlements for use of the satellite communications system:

> Contractor shall pay to Carrier a satellite communications system usage fee in the amount of fifteen dollars ($15.00) per week. Carrier may deduct any and all such amounts payable by Contractor under this subparagraph 1(b) from the compensation otherwise payable to Contractor hereunder.

(ICA, Ex. B at 1(b).)

**RESPONSE**:  Uncontroverted.

20.     The ICA states further:

> Contractor expressly acknowledges and agrees that Carrier may deduct from the compensation otherwise payable to Contractor pursuant to paragraph 3 hereof amounts sufficient to cover Contractor's payment obligations as specified in this Agreement, as well as any other amounts specifically directed and authorized by Contractor. Carrier will not make any deductions from Contractor's compensation hereunder for any charge-back item unless the item is clearly specified in this Agreement (including separate documents which are incorporated herein by reference). Contractor specifically authorizes carrier to make deductions for the following items: …
>
>> (b) charges related to Carrier's satellite communications unit, if applicable, and the satellite communications system usage fee described in paragraph 1(b) …

(ICA, Ex. B at 15.)

**RESPONSE**:  Generally uncontroverted, although Plaintiffs note that (b) in the quoted language above refers to subparagraph 1(b) rather than paragraph 1(b).

21.     The cost to TransAm Trucking for the satellite communications system exceeds the $15 per week deducted from settlements. While it varies, the actual cost is approximately $25 or more per week per driver. (Deposition of Murray Droescher, Nov. 3, 2014, Ex. L at 11-12, 15-18, 25-26.)

**RESPONSE**:  Uncontroverted that Mr. Droescher testified the invoice costs exceeded the $15 weekly fee. Controverted in that Mr. Droescher did not specify, however, whether this calculation of the "per driver" fee included company drivers or just independent contractors. Further controverted in that Mr. Droescher also testified that the invoice fee, which is unrelated to the system usage fee TransAm charges its independent contractors, includes costs in addition to what TransAm pays for the satellite communications system usage, such as repair charges, tracker kits, costs of units themselves, and costs of harnesses, to name a few. (See Exhibit C, Deposition of Murray Droescher, Nov. 3, 2014, at 26-29.) Even if this were not controverted, however, it is irrelevant to the case at hand.

22.     TransAm Trucking decided on $15 per week based on market conditions, not its costs. (Droescher Deposition, Nov. 3, 2014, Ex. L at 11-12.)

**RESPONSE**:   Uncontroverted that Murray Droescher testified at a Rule 30(b)(6) deposition on behalf of TransAm Trucking that TransAm used "market conditions" to determine the fee. Plaintiffs controvert, however, what "market conditions" may or may not mean. Mr. Droescher testified that he talked to unnamed TransAm Trucking drivers about their previous experiences with other unnamed companies and looked at unspecified published material. He

could not recall, however, the name of any specific company that was charging $15 weekly for usage of satellite communications services. (See Exhibit L to Defendants' Motion for Summary Judgment, Deposition of Murray Droescher, Nov. 3, 2014, at 15-17.)

23.     The $15 per week charge for use of the satellite communications system is clearly set out in settlement statements. (Droescher Affidavit, Ex. A at 10; Settlement Statement, Ex. I.)

**RESPONSE**:  Uncontroverted that the satellite communications system usage fee is denominated on settlement statements. Plaintiffs and Class Members would note, however, as can be found in its Statement of Additional Facts, that TransAm Trucking's designated corporate representative, Murray Droescher, testified that he did not believe TransAm Trucking had provided drivers with a written recitation as to how the $15 satellite communications system usage fee was computed. (Exhibit C, Deposition of Murray Droescher, Nov. 3, 2014, at 45.) Additionally, in a supplement response to interrogatories, TransAm Trucking stated that the only documents provided to Class Members that would have permitted them to determine the validity of the charges were the ICA itself and settlement statements. (Exhibit D, Supplemental Response by TransAm Trucking to Plaintiffs' Second Set of Interrogatories and Request for Production.).

### Bobtail/Deadhead and Occupational Accident Insurance

24.     The ICA states TransAm Trucking will provide public liability insurance:

Pursuant to FMCSA regulations under 49 U.S.C. 13906, [TransAm Trucking] shall maintain, at its own expense, public liability and property damage insurance coverage or self-insurance for the protection of the public.

(ICA, Ex. B at 9.)

**RESPONSE**:  Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing

Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class

claims, which are subject to competing motions for summary judgment.

      25.    The ICA also states:

> Contractor acknowledges and agrees that if Contractor (or any agent or employee
> of Contractor) is responsible for an accident resulting in loss or damage to third
> parties and/or their property (i.e., public liability) while operating the Equipment
> under this Agreement, then Contractor shall pay up to and including the sum of
> Two Thousand Dollars ($2,000) for such public liability, including property
> damage, bodily injury and/or environmental restoration.

(ICA, Ex. B at 9.)

      **RESPONSE**: Objection. This Action has proceeded as a class action on Count III of

Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified

on this claim on June 11, 2014, and later amended. This Court should defer addressing

Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class

claims, which are subject to competing motions for summary judgment.

      26.    Contractors are required to provide their own bobtail/deadhead insurance and

occupational accident insurance. (ICA, Ex. B at 9.)

      **RESPONSE**: Objection. This Action has proceeded as a class action on Count III of

Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified

on this claim on June 11, 2014, and later amended. This Court should defer addressing

Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class

claims, which are subject to competing motions for summary judgment.

      27.    Contractors are not required to purchase this insurance through TransAm

Trucking. The ICA states:

> Contractor shall have the option of either independently contracting for the
> insurance required under this paragraph 9, or requesting [TransAm Trucking] to
> obtain such coverage in Contractor's name and charge such costs to Contractor. In

> the event Contractor chooses the latter option, [TransAm Trucking] will provide Contractor with a certificate of insurance for each such policy … If applicable, the specific amount to be charged for such insurance coverage will be attached hereto as EXHIBIT B and incorporated herein by reference, and [TransAm Trucking] may deduct such amounts from the compensation otherwise payable to Contractor hereunder.

(ICA, Ex. B at 9.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

28.     Contractors have the option of purchasing bobtail/deadhead and occupational accident insurance through TransAm Trucking. (ICA Addendum, Ex. M.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

29.     The cost of obtaining bobtail/deadhead insurance and occupational accident insurance through TransAm Trucking is clearly set out in an exhibit to the ICA. (Exhibit B to the ICA, Ex. B.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class

claims, which are subject to competing motions for summary judgment.

30. The named Plaintiffs chose to purchase bobtail/deadhead and occupational accident insurance through TransAm Trucking by separately signing an addendum to the ICA. (ICA Addendums, Ex. M, N and O.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

31. The addendum states, "I understand that I am not required to purchase this, or any item or product from TransAm Trucking, Inc." (ICA Addendum, Ex. M.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

32. The cost for bobtail/deadhead and occupational accident insurance was deducted from the Plaintiffs' settlements, and those deductions were accurately reflected on the Plaintiffs' settlement statements. (Droescher Affidavit, Ex. A at 11; Settlement Statement, Ex. I.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class

claims, which are subject to competing motions for summary judgment.

## Physical Damage Insurance

33.     In the ELA, the Plaintiffs agreed to a charge of $125.00 per week for "collision, fire and theft (physical damage) insurance coverage on the Equipment." (ELAs, Ex. E, F and G at 19.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

34.     The Plaintiffs authorized TransAm Trucking to deduct this amount from their settlements, by separately signing and dating an exhibit to the ICA. (Exhibit D to the ICA, Ex. B.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

35.     This exact amount was deducted from the Plaintiffs' settlements, and that deduction was clearly shown on the Plaintiffs' settlement statements. (Droescher Affidavit, Ex. A at 12; Settlement Statement, Ex. I.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified

on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

## Breakdown Insurance

36.     TransAm Leasing offers the option of insurance for unplanned repairs, also called "breakdown" insurance. (Brochure, Ex. P.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

37.     Breakdown insurance supplies another semi-tractor while unplanned repairs are completed so a contractor can continue to earn income, and also covers the contractors' lease payments while his own truck is out of service. (Brochure, Ex. P.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

38.     TransAm Leasing does not require anyone to purchase breakdown insurance. (ELA, Ex. E.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified

on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

39.     The named Plaintiffs chose to purchase breakdown insurance by separately signing an addendum to the ELA. (ELA Addendums, Ex. Q, R and S.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

40.     The price for breakdown insurance was clearly set out in two documents given to the Plaintiffs; a brochure, and a document titled "Escrow – Optional Increases." (Brochure, Ex. P; Optional Increases, Ex. T.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

41.     In fact, handwritten calculations by one of the Plaintiffs, Anthony Gillespie, on his copy of the Optional Increases document include the amount for breakdown insurance. (Handwritten Calculations on Optional Increases, Ex. T.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified

on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

42.     The Plaintiffs authorized TransAm Trucking to deduct the cost for breakdown insurance from their settlements, by separately signing and dating an exhibit to the ICA. (Deduction and Remittance Requests, Ex. E, F and G.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

43.     That cost was deducted from the Plaintiffs' settlements, and those deductions were accurately reflected on the Plaintiffs' settlement statements. (Droescher Affidavit, Ex. A at 13; Settlement Statement, Ex. I.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

**Buy-Down**

44.     In the ICA, contractors agree to indemnify TransAm Trucking up to a certain amount for injury or property damage the contractor may cause, and for which TransAm Trucking may be liable. (ICA, Ex. B at 9.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

45.     TransAm Trucking allows contractors to lower that indemnification amount by "buying down" the amount. (ICA Addendum, Ex. M.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

46.     TransAm Trucking does not require contractors to buy down their indemnification. (ICA, Ex. B; ICA Addendum, Ex. M.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

47.     The named Plaintiffs chose to buy down their indemnification by separately signing an addendum to the ICA. (ICA Addendums, Ex. M, N and O.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified

on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

48.     The cost for the buy-down was clearly listed in a document given to the Plaintiffs called "Escrow – Optional Increases." (Optional Increases, Ex. T.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

49.     In fact, handwritten calculations by one of the Plaintiffs, Anthony Gillespie, on his copy of the Optional Increases document include the amount for the buy-down option. (Handwritten Calculations on Optional Increases, Ex. T.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

50.     The cost of the buy-down was deducted from the Plaintiffs' settlements, and those deductions were accurately reflected on the Plaintiffs' settlement statements. (Droescher Affidavit, Ex. A at 14; Settlement Statement, Ex. I.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified

on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

## Rider Insurance

51.     The Amended Complaint asserts TransAm Trucking charged the named Plaintiffs for rider insurance, and that charge was an undisclosed charge-back item in violation of Truth-in-Leasing regulations. (Amended Complaint, Doc. 90 at p. 37-38.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

52.     None of the named Plaintiffs opted to purchase rider insurance through TransAm Trucking, and no charge for rider insurance appears on the Plaintiffs' settlement statements. (Droescher Affidavit, Ex. A at 15.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

## PrePass

53.     TransAm Trucking offers contractors the option of purchasing a "PrePass" service, which allows their semi-tractors to bypass highway scales, and allows the automated

payment of tolls. (Droescher Affidavit, Ex. A at 16.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

54.     TransAm Trucking does not require anyone to purchase a PrePass. (ICA, Ex. B.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

55.     The Plaintiffs chose to purchase a PrePass through TransAm Trucking by separately signing a "PrePass Authorization" form. (PrePass Authorizations, Ex. U, V and W.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

56.     The PrePass Authorization clearly states that PrePass is an "optional" service costing $3.40 per week. (PrePass Authorization, Ex. U.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified

on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

57.     The PrePass Authorization also states, "I understand that I am not required to purchase this service from TransAm Trucking, Inc." (PrePass Authorization, Ex. U.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

58.     The cost for PrePass was deducted from the Plaintiffs' settlements, and the deduction was clearly set forth on their settlement statements. (Droescher Affidavit, Ex. A at 17; Settlement Statement, Ex. I.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

**Fuel Optimizer**

59.     TransAm Trucking offers contractors the option of purchasing a fuel optimization program. (Fuel Optimizer Authorization, Ex. X.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified

on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

60.     The fuel optimization program helps contractors maximize fuel efficiency by advising them when and where to fuel their semi-tractors. (Droescher Affidavit, Ex. A at 18.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

61.     TransAm Trucking does not require anyone to purchase this program. (ICA, Ex. B.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

62.     The named Plaintiffs chose to purchase the fuel optimization program by separately signing a Fuel Optimizer Authorization. (Fuel Optimizer Authorizations, Ex. X, Y and Z.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing

Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

63.    The Fuel Optimizer Authorization states it is an "optional" service that costs $3.00 per week. (Fuel Optimizer Authorization, Ex. X.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

64.    The Fuel Optimizer Authorization also states, "I understand that I am not required to purchase this service from TransAm Trucking, Inc." (Fuel Optimizer Authorization, Ex. X.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

65.    The cost for the fuel optimizer program was deducted from the named Plaintiffs' settlements, and the deduction was clearly set out on their settlement statements. (Droescher Affidavit, Ex. A at 19; Settlement Statement, Ex. I.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class

claims, which are subject to competing motions for summary judgment.

## Hand Loading

66.     The Plaintiffs claim TransAm Trucking deducted amounts from their settlements for "hand loading," and this deduction constituted an undisclosed charge-back in violation of Truth-in-Leasing regulations. (Amended Complaint, Doc. 90 at p. 43-44.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

67.     "Handload" or "HL" is an accounting term for manually advancing funds to a contractor. (Droescher Affidavit, Ex. A at 20.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

68.     TransAm Trucking advanced funds to the Plaintiffs on their request, and when those funds were later deducted from a settlement, the deduction item was called a "handload" or "HL" on the Plaintiffs' settlement statements. (Droescher Affidavit, Ex. A at 21.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing

Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

69.     The deduction of previously advanced funds from a settlement is specifically authorized by the ICA. (ICA, Ex. B at 14, 15.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

### Advertising

70.     In their depositions, the named Plaintiffs testified they, collectively, only saw two pieces of TransAm Trucking advertising; a postcard, and an advertisement in a booklet at truck-stops.

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

#### *Postcard*

71.     Copies of the postcards sent to prospective drivers at the time the Plaintiffs contracted with TransAm Trucking are attached as Exhibits AA, BB, and CC.

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified

on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

72.     The postcards do not contain any representation or promise that contractors will driver 2,500 to 3,000 miles per week or receive a net income of $138,000 per year. (Postcards, Ex. AA, BB and CC.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

73.     The ICA affirmatively states there is no guarantee as to the number of miles a contractor might drive per week. (ICA, Ex. B at 2(a).)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

74.     TransAm Trucking's contractors drive, on average, between 2,500 and 3,000 miles per week. (TransAm Trucking's Answers to Interrogatories, Ex. DD at 8.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing

Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

75.     Anthony Gillespie produced a postcard in discovery, but it was dated in May 2012, after he stopped driving for TransAm Trucking. (Gillespie Postcard, Ex. EE.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

76.     Charles Schreckenbach also produced a postcard in discovery, but it was postmarked in March 2012, after he stopped driving for TransAm Trucking. (Schreckenbach Postcard, Ex. FF.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

77.     The postcards sent to Anthony Gillespie and Charles Schreckenbach (after they left TransAm Trucking) both stated, "Owner operators *gross* an average of $138,000 per year." (Gillespie Postcard, Ex. EE; Schreckenbach Postcard, Ex. FF) (emphasis added).)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing

Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

78.     Contractors at TransAm Trucking gross more than $138,000 per year on average. The average annual gross income for contractors for each year between 2009 and 2012 was:

2009:  $170,872

2010:  $180,028

2011:  $180,286

2012:  $177,771

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

79.     The Internal Revenue Service Form 1099s for the named Plaintiffs demonstrate their annualized gross income exceeded $138,000 while they were driving for TransAm Trucking. (1099s, Ex. GG; Annualized Income Figures, Ex. HH.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

*Booklet*

80.     A copy of the "booklet ad" in circulation at the time the named Plaintiffs

contracted with TransAm Trucking is attached as Exhibit H.

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

81.   In her deposition, Candace Fox testified she only saw one TransAm Trucking advertisement and it was a "booklet" ad. (Deposition of Candace Fox, Ex. JJ at 124-25.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

82.   Anthony Gillespie and Charles Schreckenbach also testified they saw the booklet ad. (Deposition of Anthony Gillespie, Exhibit KK at 73-75; Deposition of Charles Schreckenbach, Exhibit LL at 52-54, 57-58.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

83.   The booklet ad says nothing about driving 2,500 to 3,000 miles a week or receiving a net income of $138,000. (Booklet Ad, Ex. II.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

*Website Video*

84.     According to their deposition testimony, the named Plaintiffs did not view TransAm Trucking's website before deciding to contract with TransAm Trucking. (Fox Deposition, Ex. JJ at 106; Gillespie Deposition, Ex. KK at 107; Schreckenbach Deposition, Ex. LL at 58.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

85.     The website contains two videos. (www.transamtruck.com.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

86.     In one video, a driver in an interview states, "*I* average between 2500 and 3000 miles a week." (See "What makes TransAm Trucking a great choice for drivers?" at

www.transamtruck.com).

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

87.   TransAm Trucking's head of marketing, Rhonda McFarland, testified in her deposition that this comment was unscripted. (Deposition of Rhonda McFarland, Ex. MM at p. 154-159.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

88.   Neither video contains any representation or promise about net income. (www.transamtruck.com.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

89.   Neither video was published until after the named Plaintiffs had already contracted with TransAm Trucking in August 2011. The invoices for creating the videos show

one was not published until after September 2011 and the other after July 2012. (Production Invoices, Ex. NN.)

**RESPONSE**: Objection. This Action has proceeded as a class action on Count III of Plaintiffs' claims regarding the satellite communications system usage fee. A Class was certified on this claim on June 11, 2014, and later amended. This Court should defer addressing Defendants' Motion for Summary Judgment on all but Count III pending resolution of the class claims, which are subject to competing motions for summary judgment.

### III.     STATEMENT OF ADDITIONAL FACTS

1.      On page 5 of Whitney Morgan's report, he states "The requirement of a satellite communications system usage fee is in violation of FMCSRs § 376.12(i) because it requires the lessor to purchase a service from TransAm. This provision is found in Paragraph 1(b) of the lease, and sets forth that regardless of whether the contractor furnishes their own satellite unit or TransAm gives them one, contractor has to pay TransAm a $15.00 per week fee to use the satellite system." (Exhibit A, Report of Whitney Morgan.)

2.      Whitney Morgan testified that it is his opinion that the satellite communications system usage fee violates § 376.12(i). (Exhibit B, Deposition of Whitney Morgan, December 20, 2013, at 32-35.)

3.      TransAm Trucking's designated corporate representative, Murray Droescher, testified that he did not believe TransAm Trucking had provided drivers with a written recitation as to how the $15 satellite communications system usage fee was computed. (Exhibit C, Deposition of Murray Droescher, Nov. 3, 2014, at 45.)

4.      In a supplemental response to interrogatories, TransAm Trucking stated that the documents provided to Class Members permitting them to determine the validity of charges for

the satellite communications fees consisted of operator settlements and ICAs. (Exhibit D, Supplemental Response by TransAm Trucking to Plaintiffs' Second Set of Interrogatories and Request for Production.)

5.      Murray Droescher, on behalf of TransAm Trucking, did not specify whether his calculation that the lowest cost of the "per driver" fee per week was $25 included company drivers or just independent contractors. (Exhibit C, Deposition of Murray Droescher, Nov. 3, 2014, at 26-27.)

6.      Murray Droescher, on behalf of TransAm Trucking, testified that the amount on invoices sent to TransAm Trucking by various different satellite communications providers, which is unrelated to the system usage fee TransAm charges its independent contractors, includes costs in addition to what TransAm pays for the satellite communications system usage, such as repair charges, tracker kits, costs of units themselves, and costs of harnesses. (See Exhibit C, Deposition of Murray Droescher, Nov. 3, 2014, at 26-29.)

7.      Settlement statements for a particular owner-operator are not provided to that owner-operator until he or she has driven some length of mileage for TransAm Trucking and turned in trip paperwork. (See Defendants' Statement of Fact 12.)

## IV.      SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the moving party demonstrates that there is 'no genuine issue as to any material fact' and that it is 'entitled to judgment as a matter of law.'" *Britvic Soft Drinks Ltd. V. ACSIS Techs., Inc.*, 265 F. Supp. 2d 1179, 1184 (D. Kan. 2003).

## V. DEFENDANTS ILLEGALLY FORCED PLAINTIFFS AND CLASS MEMBERS TO PURCHASE SATELLITE COMMUNICATIONS SERVICES IN VIOLATION OF FEDERAL REGULATIONS

As a regulated motor carrier that transports products in interstate commerce, TransAm Trucking must comply with federal regulations, including Truth-in-Leasing regulations over written leases set forth in 49 C.F.R. § 376.12. These written lease requirements apply to TransAm Trucking's standard-form Independent Contractor Agreements ("ICAs") that it entered into with Plaintiffs and Class Members. See 49 U.S.C. § 14704; 49 C.F.R. § 376.11. As is set forth in Plaintiffs' Motion for Summary Judgment and memorandum in support of the same (Docs. 121 and 122), and incorporated herein by reference, Plaintiffs have established Defendants' liability on the subject. Defendants are not entitled to judgment as a matter of law on this claim because they violated federal regulations.

The ICA mandates that Plaintiffs and Class Members "shall pay to Carrier a satellite communications system usage fee in the amount of fifteen dollars ($15.00) per week." In their motion seeking summary judgment, Defendants tacitly admit that a violation occurred. See Defendants' Memorandum at 18 ("Even assuming a technical violation . . .").

Defendants contend that forcing named Plaintiffs and Class Members to purchase satellite communications system usage through a non-negotiable $15 weekly fee is an allowable charge-back under 49 C.F.R. § 376.12(h). But TransAm's charge of such a fee here is, rather, a violation of § 376.12(i). The satellite communications system is a service TransAm provides and also mandates for owner-operators; a driver is not eligible to drive for TransAm without using its satellite communications system and without paying the weekly fee.

A.      TransAm Trucking Forced Plaintiffs and Class Members to Purchase Usage of its Satellite Communications System Services, Violating 49 C.F.R. § 376.12(i)

Subsection (i) of 49 C.F.R. § 376.12 forbids forced purchases and states "The lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement." The preamble to § 376.12 states "The required lease provisions shall be adhered to *and performed* by the authorized carrier." (Emphasis added.) *See, e.g., Mervyn v. Nelson Westerberg, Inc.*, No. 11 C 6594, 2014 WL 7177614, at *3 (N.D. Ill. Dec. 16, 2014) (noting in dicta that while § 376.12(i) says only that "'*[t]he lease shall specify* that the lessor is required to purchase or rent any products, equipment or services from the authorized carrier as a condition of entering into the lease arrangement," "the Seventh Circuit was not wrong in saying that § 376.12(i) imposed a substantive obligation on the carrier, as the regulation's introductory language requires carriers to actually comply with the lease terms that the regulation's subsections, like § 376.12(i), mandate for inclusion in the lease.").

TransAm essentially contends that its ICA complies with § 376.12(i) because the ICA uses the requisite magic words in paragraph 18:  "Contractor is not required to purchase or rent any products, equipment or services from Carrier or Carrier's affiliates as a condition of this Agreement." But TransAm ignores that much earlier in the ICA—in the first section—it mandates that Plaintiffs and Class Members pay a weekly "satellite communications system usage fee." This express imposition of a fee for using TransAm's satellite communications system—or its satellite communications services—constitutes a forced purchase under the Act. Plaintiffs and Class Members had no option to decline the service and still drive as an owner-operator for Defendants. Because Defendants thus forced Plaintiffs and Class Members to

purchase their service, they failed to perform the actions mandated by the regulations and violated § 376.12(i).

In this exact situation—where the lease stated the requisite language regarding forced purchases but the opposite was actually true in practice—courts have found violations of § 376.12(i). *Owner-Operator Indep. Drivers Ass'n v. Ledar Transp.*, No. 00-0258-CV-W-FJG, 2004 WL 5249148, at *7 (W.D. Mo. Dec. 30, 2004); *see also Owner-Operator Indep. Drivers Ass'n v. C.R. England, Inc.*, 508 F. Supp. 2d 972, 979, 981-82 (D. Utah 2007) (finding motor carrier violated 49 C.F.R.  § 376.12(i) by failing to specify that drivers' rental of Qualcomm satellite communication services from motor carrier for $15 a week was not a predicate of the agreement or condition of entering into the lease); *Tayssoun Transp., Inc. v. Universal Am-Can, Ltd.*, No. Civ. A. H-04-1704, 2005 WL 1185811, at *19 (S.D. Tex. April 20, 2005) (finding motor carrier agreement violated § 376.12(i) by expressly imposing obligation to purchase cargo insurance from some unspecified source despite agreement containing literal language from § 376.12(i)). The ICA does not strictly comply with the regulations, which it must do.  *See Port Drivers Fed'n 18, Inc. v. All Saints Express, Inc.*, 757 F. Supp. 2d 443, 451 (D.N.J. 2010) ("Because requiring only substantial compliance might defeat the Regulations' goal of preventing large carriers from taking advantage of owner-operators due to uneven bargaining power [citation omitted], the Court is persuaded that literal compliance is the appropriate standard."); *see also C.R. England, Inc.*, 508 F. Supp. 2d at 981 ("In determining whether a violation of the Regulations has occurred, the appropriate standard is one of strict, rather than substantial, compliance with the language of the Regulation."). It is clear based on the preamble and the language of subsection (i) itself that not only must a carrier include the requisite language in the ICA, it must also actually comply with the lease terms that subsection (i)

mandates for inclusion in the lease. Because TransAm's ICA violates Truth-in-Leasing requirements regarding forced purchases, TransAm is not entitled to summary judgment on Count III of Plaintiffs' claims.

**B.     Section 376.12(h) Does Not Exempt TransAm Trucking from Compliance with § 376.12(i)**

TransAm's attempt to pigeon-hole its satellite charge as an authorized charge-back under § 376.12(h) is equally unavailing. The two sections of the statute must be read together, in harmony—TransAm cannot violate (i) by contending that this is a charge-back under (h). Rather, TransAm must comply with both sections, one of which forbids a motor carrier from forcing owner-operators from purchasing services, such as satellite communications services, from the motor carrier. The *full* text of § 376.12(h) provides:

> The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

Section (h) requires that TransAm must disclose charges to owner-operators in the lease, but it does not exempt a motor carrier from compliance with § 376.12(i) or make exceptions from § 376.12(i). Section (h) does not allow a motor carrier to force an owner-operator to purchase its products or services so long as the motor carrier discloses the charge in advance. Further, TransAm's use of (h) to protect itself from a violation of (i) should be unavailing when TransAm did not even comply with (h). If indeed the satellite communications services usage fee constitutes a charge-back under § 376.12(h), TransAm failed to afford copies of documents

necessary to determine the validity of the charge to owner-operators.[1] Regardless of whether Defendants could or could not (or did or did not) profit from forcing contractors to purchase weekly usage of the satellite communications system, which was used for both contractors and for TransAm Trucking's company drivers, Defendants still needed to comply with Truth-in-Leasing regulations.

The ICA violates § 376.12(i) by requiring owner-operators to purchase services from TransAm in direct contravention of its own ICA, the language of the regulation, and the purpose behind the regulatory scheme. Defendants have tacitly admitted what they attempt to minimize as a "technical violation." This Court should not interpret the ICA in a manner that would circumvent the very regulations that were enacted to protect owner-operators. *See Owner-Operator Indep. Drivers Ass'n v. Bulkmatic Transp. Co.*, 503 F. Supp. 2d 961, 972 (N.D. Ill. 2007) (noting the regulations "were intended to remedy disparities in bargaining power between independent owner operators and motor carriers"). Further, TransAm drafted the ICA; it is well settled that ambiguities in a contract are to be construed against the drafter. *See Bulkmatic Transp. Co.*, 503 F. Supp. 2d at 972. TransAm Trucking's actions in forcing Plaintiffs and Class Members to purchase the services of its own satellite communications system through a weekly fee is a violation of § 376.12(i); TransAm is not entitled to judgment as a matter of law.

---

[1] TransAm Trucking stated in interrogatories that the only documents provided to Class Members that would have permitted them to determine the validity of the charges were the ICA itself and settlement statements. But settlement statements were not provided at the time of contracting to allow Class Members to determine or assess the fee. And Murray Droescher, as a corporate representative of TransAm Trucking, testified that TransAm Trucking had not provided drivers with a written recitation as to how the $15 satellite communications system usage fee was computed.

C.      Plaintiffs Can and Will Be Able to Establish Damages

Defendants' arguments regarding damages are premature. Plaintiffs can and will put on evidence regarding damages at time of trial. Defendants' attempts to require Plaintiffs to establish damages at a summary judgment phase is incorrect:   Plaintiffs are entitled to seek summary judgment on liability only—especially when liability is as clear-cut as it is here— leaving damages for another day. Defendants point to nothing that establishes Plaintiffs cannot establish damages, and their citations simply cannot guide this Court to their position.

Citing *Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307 (11th Cir. 2010), and *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co.*, 632 F.3d 1111 (9th Cir. 2011), Defendants contend that Plaintiffs are unable to show damages. But Defendants' statements oversimplify both *Landstar* and *Swift*. In *Landstar*, the Eleventh Circuit Court of Appeals actually remanded the case for an evidentiary hearing because owner-operators did not have an opportunity to prove whether they had sustained actual damages due to the motor carrier's failure to comply with the Truth-in-Leasing regulations. *Landstar*, 622 F.3d at 1326. And in *Swift*, owner-operators *only* argued that their damages were the amount of the motor carrier's undisclosed and undocumented mark-ups. To the extent that what makes Plaintiffs whole might ultimately encompass the same amount as restitution might, Defendants' argument is misplaced. The Plaintiffs seek damages in their First Amended Class Action Complaint, not restitution.

Defendants contend that "Plaintiffs must show some difference between the amount charged by TransAm Trucking and a lower market rate." But the proper measure of damages is what is necessary to make Plaintiffs whole—not simply the difference between Defendants' charges and "market rates." Industry practice alone is not a complete defense against a Truth-in-

Leasing claim. In any case, Defendants supply no evidence of "market rates." Instead, they offer Mr. Droescher's post-hoc speculations based on conversations with drivers whose names he cannot recall, and his "review" of competitor practices he is unable to identify. Had Defendants complied with the provisions of § 376.12(i), then Plaintiffs would not have been forced to purchase usage of the satellite communications systems from TransAm Trucking.

TransAm Trucking asserts that Plaintiffs could not purchase usage of satellite communications systems separately from a third party—they had to purchase usage from TransAm Trucking, the motor carrier. Inherently, this argument establishes liability despite TransAm's protestations to the contrary—under this logic, Plaintiffs were in fact forced to purchase these services from TransAm. But the argument regarding Plaintiffs' and Class Members' supposed inability to purchase usage of such a system in the marketplace again oversimplifies Plaintiffs' choices:  before satellite communications systems existed, for example, owner-operators were able to drive for motor carriers and were still able to plan routes (e.g., by using maps), comply with regulations regarding hours of service (e.g., by monitoring their own time with a watch), and communicate with dispatch (e.g., through phones). Now, other tools are even more readily available outside of satellite communications systems for drivers, such as lap tops, cell phones (with their myriad mobile apps), and GPS devices. Contrary to Defendants' assertion, it is very possible that Plaintiffs could have made different choices in this case and, but for TransAm Trucking's violation, saved money.

## VI.   DEFENDANTS' MOTION ON PLAINTIFFS' INDIVIDUAL CLAIMS SHOULD BE DEFERRED

Defendants make numerous arguments regarding other claims Plaintiffs have made. They are not entitled to judgment as a matter of law on any of them, but Plaintiffs do not address them here. As is more fully set forth in Plaintiffs' Rule 56(d) Motion to Stay Adjudication of

Uncertified, Individual Claims Raised by Defendants' Motion for Summary Judgment, this Court should address Plaintiffs' and Class Members' claims in Count III of their First Amended Class Action Complaint regarding the satellite communications system usage fee first, before addressing Plaintiffs' individual claims.

## VII.    CONCLUSION

TransAm Trucking forced its independent contractors (Plaintiffs and Class Members) to purchase services from TransAm Trucking in the form of the weekly satellite communications system usage fee, which is explicitly forbidden by 49 C.F.R. § 376.12(i). Defendants now seek to argue that such a charge is a charge-back and permissible under 49 C.F.R. § 376.12(h), but subsection (h) does not provide an exemption for compliance with subsection (i). As Plaintiffs were damaged by TransAm Trucking's actions, Defendants are not entitled to judgment as a matter of law on Count III of Plaintiffs' claims.

Respectfully submitted,

**SHAFFER LOMBARDO SHURIN, P.C.**

By:_____/s/Richard F. Lombardo_____
　　　Richard F. Lombardo   KS #70492/#22326
　　　Gregory P. Forney　　　　#16329
　　　Daniel M. Runion　　　　 #15608
　　　Anne Gepford Smith　　　 #24636
　　　911 Main Street, Suite 2000
　　　Kansas City, MO  64105
　　　816-931-0500  Telephone
　　　816-931-5775  Facsimile
　　　rlombardo@sls-law.com
　　　gforney@sls-law.com
　　　drunion@sls-law.com
　　　asmith@sls-law.com

　　　Gregory Leyh, KS　　　　　#15706
　　　GREGORY LEYH, P.C.
　　　104 NE 72nd Street

Suite I
Gladstone, MO 64118
(816) 283-3380
(816) 283-0489 (Facsimile)
gleyh@leyhlaw.com


ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

On this 26th day of January, 2015, a true and accurate copy of the foregoing Plaintiffs'
Memorandum in Opposition to Defendants' Motion for Summary Judgment was served on the
following counsel of record via electronic notification (CM/ECF):

Christopher M. McHugh
Gregory S. Gerstner
Rachel H. Baker
Shannon Cohorst Johnson
Seigfreid Bingham, P.C.
cmchugh@seigfreidbingham.com
ggerstner@seigfreidbingham.com
rbaker@seigfreidbingham.com
sjohnson@seigfreidbingham.com
2800 Commerce Tower
911 Main Street
Kansas City, MO  64105
(816) 421-4460  Telephone
(816) 474-3447  Fax


James C. Sullivan
Polsinelli PC
jsullivan@polsinelli.com
Twelve Wyandotte Plaza
120 W. 12th Street
Kansas City, MO  64105
(816) 421-3355  Telephone
(816) 374-0509  Fax


Attorneys for TransAm Trucking, Inc.
And TransAm Leasing, Inc.


    /s/Richard F. Lombardo
Attorney for Plaintiffs