**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **CANDACE FOX, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 12-2706-CM |
| ) | |
| **TRANSAM LEASING, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

### MEMORANDUM AND ORDER

Named plaintiffs Candace Fox, Anthony Gillespie, and Charles Schreckenbach, individually and on behalf of others similarly situated, brought this action alleging that TransAm Leasing, Inc. and TransAm Trucking, Inc. (collectively referred to as "TransAm") violated various federal and state laws. Plaintiffs moved to certify three of their fifteen claims—two under the Kansas Consumer Protection Act ("KCPA"), Kan. Stat. Ann. §§ 50-626, -627,[1] and one under truth-in-leasing regulation 49 C.F.R. § 376.12(i).

On June 11, 2014, this court declined to certify plaintiffs' KCPA claims, concluding that individual inquiries would be necessary to establish liability. (Doc. 80 at 13.) However, the court certified plaintiffs' claim under 49 C.F.R. § 376.12(i), concluding that the issue of whether TransAm's weekly charge for a satellite communications service was unlawful involved common proof. (Doc. 80 at 14.) The court approved class notice for the following class:

> All persons, including entities, who operated under an Independent Contractor Agreement that included a satellite communications system usage fee with TransAm Trucking, Inc. between November 2, 2008, through the present.

(Doc. 89 at 5.)

---

[1] Plaintiffs' KCPA claims are based on allegations that defendants made false representations and material omissions about the amount of compensation plaintiffs would make driving trucks as independent contractors.

-1-

Before the court are competing motions for summary judgment: Plaintiffs' Motion for Partial Summary Judgment on Liability (Doc. 121) and TransAm's Motion for Summary Judgment (Doc. 123). Plaintiffs argue that the satellite communications fee is a forced purchase in violation of 49 C.F.R. § 376.12(i). (Doc. 121.) TransAm argues that the satellite communications fee does not violate § 376.12(i) because it is a permissible chargeback under § 376.12(h). (Doc. 123.) TransAm also seeks summary judgment on plaintiffs' individual claims related to bobtail insurance, physical damage insurance, breakdown insurance, buy-down insurance, rider insurance, pre-pass, fuel optimizer, hand-loading, and false advertising. (*Id.*)

### I. Facts

TransAm is a federally regulated motor carrier engaged in the business of over-the-road transport of goods. Plaintiffs and the class members are independent truck drivers, each of whom signed largely identical Independent Contractor Agreements ("ICA").[2] TransAm drafted the ICA, which is a standard form and is provided to all persons seeking to become independent contractor drivers. As a general rule, the ICAs are nonnegotiable, although there are some options an independent contractor may chose or decline. Pertinent to the instant motions, the ICA contains the following provision relating to a weekly fee for satellite communications services (the "Satellite Fee"):

> [R]egardless of whether the Contractor furnishes a compatible satellite communications unit in the Equipment or borrows a compatible unit from Carrier hereunder, Contractor shall pay to Carrier a satellite communications system usage fee in the amount of $15 per week. Carrier may deduct any and all such amounts payable by Contractor under this subparagraph 1(b) from the compensation otherwise payable to Contractor hereunder.

(Doc. 122 ¶ 5.) TransAm does not dispute that the Satellite Fee is required for those wanting to drive as an independent contractor. (Doc. 127 at 3 ("[I]f someone wished to drive for TransAm Trucking under an ICA, he or she would need to agree to the charge.").) TransAm offers drivers the option to

---

[2] The ICAs are considered leases under federal truth-in-leasing regulations because the contractor is considered to be leasing the truck and driving services to the motor carrier.

drive as an employee, and TransAm employees do not pay a Satellite Fee. (*Id.*) However, in order to drive for TransAm as an independent contractor, plaintiffs and class members had no choice but to authorize the weekly deduction of fifteen dollars for the Satellite Fee.

TransAm asserts the satellite communications system is used to more effectively and efficiently plan routes; automate fuel tax reporting; monitor the temperature of refrigerated loads; and communicate with dispatch to verify compliance with regulations regarding, among other things, hours of service. TransAm claims that the actual cost to TransAm is approximately twenty-five dollars or more per week for each driver, and that it decided to charge fifteen dollars per week based on market conditions, not its costs. TransAm claims it has paid and continues to pay hundreds of thousands of dollars to third parties for a satellite communications system specific to semi-tractor trailers.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In applying this standard, the court views the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). This legal standard does not change where, as here, the court is ruling on cross-motions for summary judgment, for each party still has the burden to establish the lack of a genuine issue of material fact and its entitlement to judgment as a matter of law. *City of Shawnee, Kan. v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008). In ruling on the parties' motions, the court must keep in mind that "[c]ross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Id.* (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)) (internal quotations omitted). To the extent the cross-

motions overlap, however, the court may address the legal arguments together. *Sunflower Bank, N.A. v. Fed. Deposit Ins. Corp.*, No. 09-4006-SAC, 2010 WL 3913597, at *1 (D. Kan. Sept. 30, 2010).

### III.  Analysis

The Federal Motor Carrier Safety Administration's truth-in-leasing law regulates truck leases. Lease and Interchange of Vehicles, 49 C.F.R. § 376.  Under § 376.12(i), a "lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement."  49 C.F.R. § 376.12(i).  Plaintiffs argue that the Satellite Fee violates this regulation.

#### A.  Section  376.12(i) Requires Performance

TransAm first argues that it has complied with § 376.12(i) because the ICA contains the following clause:  "Contractor is not required to purchase or rent any products, equipment or services from Carrier or Carrier's affiliates as a condition of this Agreement."  However, simply because the ICA contains this language does not mean that TransAm has in fact complied with its obligations under § 376.12(i).

The preamble to § 376.12 states, "The required lease provisions shall be adhered to *and performed* by the authorized carrier."  49 C.F.R. § 376.12 (emphasis added).  Thus, in addition to including the requisite lease terms, the regulation imposes a substantive obligation on carriers to actually comply with the lease terms mandated by the regulations. *Mervyn v. Nelson Westerberg, Inc.*, No. 11 C 6594, 2014 WL 7177614, at *3 (N.D. Ill. Dec. 16, 2014) (citing *Owner-Operator Indep. Drivers Ass'n v. Mayflower Transit, LLC*, 615 F.3d 790 (7th Cir. 2010) and stating that "the Seventh Circuit was not wrong in saying that § 376.12(i) imposed a substantive obligation on the carrier, as the regulation's introductory language requires carriers to actually comply with the lease terms that the regulation's subsections, like § 376.12(i), mandate for inclusion in the lease.").  So in addition to

including language in the ICA that independent contractors are not required to purchase or rent products, equipment, or services from it, TansAm must in fact not require its independent contractors to purchase or rent products, equipment, or services from it.

### B. The Satellite Fee is an Unlawful Forced Purchase

TransAm does not dispute that the Satellite Fee is a required weekly fee for anyone wishing to drive as an independent contractor[3] and is a condition of entering into the ICA.  Contractors may not negotiate the Satellite Fee if they wish to use other communications devices in place of it, nor are they allowed to drive for TransAm without paying the weekly Satellite Fee.  Thus, although the ICA contains the literal language mandated by § 376.12(i), the ICA expressly imposes the obligation to pay TransAm the Satellite Fee.

TransAm argues that the Satellite Fee is an allowable chargeback under § 376.12(h), which provides:

> **Charge-back items** – The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at time of payment or settlement, together with a recitation as to how the amount of each item is to be computed.  The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

49 C.F.R. § 376.12(h).  TransAm asserts that it must pay a service provider for its satellite communications system and that it simply charges back the cost of that to its drivers.  However, section 376.12(h) and section 376.12(i) must be read together, in harmony—TransAm cannot argue that it does not violate subsection (i) simply by contending that the Satellite Fee is a chargeback under subsection (h).   Subsection (h) is a disclosure provision—it mandates the information and documents that TransAm must disclose.  There is no language suggesting that § 376.12(h) exempts a motor carrier

---

[3] TransAm points out that it offers drivers the option to drive as an employee (as opposed to an independent contractor) and that TransAm employees do not pay a Satellite Fee.  The court finds that this fact is irrelevant to the issue of whether the ICA complies with truth-in-leasing regulations, nor does this fact somehow lessen the mandatory nature of the Satellite Fee as it regards those individuals desiring to drive for TransAm as independent contractors.

from compliance with § 376.12(i) or makes any sort of exceptions to § 376.12(i).  In other words, Subsection (h) does not allow a motor carrier to require an independent contractor to purchase products or services *only so long as* the motor carrier discloses the charge in advance, and the forced purchase of an item does not become a chargeback simply because the amount of the item is disclosed in the lease.

The court determines that the Satellite Fee is an unlawful forced purchase.  Unlike items such as insurance or taxes, there is no federal law or regulation requiring that TransAm use a satellite communications system or that TransAm require its drivers to use a satellite communications system.  And while TransAm itself can require its independent contractors to have certain equipment necessary for its particular operation—like a satellite communication system—the court concludes that TransAm cannot under § 376.12(i) require its independent contractors to purchase or rent this service from it.  This conclusion furthers the stated purpose of the regulation, which is "to insure that the lessor will not be obligated to purchase or rent products or services from the authorized carrier as a condition to entering into a lease arrangement."  *Lease & Interchange of Vehicles*, 129 M.C.C. 700, 729–30 (I.C.C. 1978).  Plaintiffs and class members must have the option of obtaining equipment or services— including satellite communications services— from an outside source.  *Id.* ("Lessors will be free to purchase fuel, rent trailers, obtain insurance, and so on, from whatever source they so choose.").

**C.  The Satellite Fee is a "Purchase" from TransAm**

The court also concludes that the Satellite Fee is a purchase from TransAm even though TransAm ultimately pays a third-party for the service.  In *Mayflower*, the Seventh Circuit found that Mayflower's chargeback to its owner-operators for liability insurance did not violate § 376.12(i) because Mayflower was not itself selling the insurance.  *Mayflower*, 615 F.3d at 793 ("Plaintiffs treat the charge-back as a sale of insurance by Mayflower.  Yet it is not an insurer.  It is not authorized to

-6-

underwrite risks."). The Seventh Circuit reasoned that requiring owner-operators to "pay" Mayflower for liability insurance was not the same thing as requiring them to "purchase" liability insurance from Mayflower. *Id.* In finding the chargeback for liability insurance to be lawful, the Seventh Circuit also looked to § 317.12(j)(1), which expressly permits motor carriers to chargeback for insurance. *Id.* at 795 ("The reference to chargebacks in the third sentence [of § 317.12(j)(1)] is incompatible with the owner-operators' contention that chargebacks are "sales" forbidden by § 376.12(i )." (quoting § 317.12(j)(1) ("If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor."))).

The Seventh Circuit's conclusion that owner-operators were not "purchasing" insurance from Mayflower is distinguishable from the instant case. Under federal regulations, all motor carriers (including Mayflower) are required to purchase and maintain liability insurance underwritten by "real" insurers. *Id.* ("The regulation requires motor carriers to purchase insurance underwritten by *real* insurers, so that persons injured by a motor carrier's operations may find a source of compensation more reliable than the motor carrier itself, which often is thinly capitalized.") (emphasis in original); 49 U.S.C. § 13906. Thus, in a strict sense, Mayflower could never "sell" liability insurance to its owner-operators because it is itself required by law to purchase that coverage from real insurance providers. Conversely, owner-operators cannot shop the market to purchase liability insurance themselves because liability insurance is the motor carriers' legal responsibility.

In this case, TransAm is not legally mandated to purchase and provide satellite communications services, yet TransAm required plaintiffs to pay it for the service—a service for which plaintiffs could have lawfully shopped the market and purchased on their own. This fact distinguishes *Mayflower*. Additionally, unlike *Mayflower*, there is no regulation expressly authorizing a chargeback for a satellite communications service. 615 F.3d at 794 (citing § 376.12(j)(1) and holding that "a

-7-

chargeback for the cost of insurance is not a sale of insurance."). In these circumstances, the court determines that plaintiffs' payment to TransAm for a satellite communications service is a purchase of that service from TransAm for purposes of 376.12(i).

The ICA makes the purchase of a satellite communications service from TransAm mandatory, and, therefore, violates § 376.12(i). *See Owner-Operator Indep. Drivers Ass'n v. C.R. England, Inc.*, 508 F. Supp. 2d 972, 975 (D. Utah 2007) (finding a fifteen-dollar weekly satellite communications fee was a forced purchase that violated § 376.12(i) because the independent contractor agreement failed to adequately specify that the purchase of the service was not a predicate to the agreement); *Owner-Operator Indep. Drivers Ass'n v. Ledar Transp.*, No. 00-0258-CV-W-FJG, 2004 WL 5249148, at *7 (W.D. Mo. Dec. 30, 2004) (finding a § 376.12(i) violation, stating that "[d]espite language in the Lease Agreement stating that owner-operators were not required to purchase [insurance] products and [truck repair] services from [defendant], in practice just the opposite was true.");[4] *Tayssoun Transp., Inc. v. Universal Am-Can, Ltd.*, No. Civ. A. H-04-1704, 2005 WL 1185811, at *19 (S.D. Tex. Apr. 20, 2005) (noting that, even though the literal language mandated by § 376.12(i) was contained within the lease, an obligation was still expressly imposed on the owner-operator to pay per trip for cargo insurance, which violated § 376.12(i) because there was no mention anywhere that the "cargo insurance" was not mandatory). Thus, the ICA violates § 376.12(i) by requiring independent contractors to purchase services from TransAm in direct contravention of its own ICA, the language of the regulation, and the purpose behind the regulatory scheme.

**D. Actual Damages are Not an Element of Liability**

---

[4] The court is aware that the district court in *Ledar* mistakenly relied on the Interstate Commerce Commission's comments from 1981 (instead of 1982) when it concluded that profits on chargebacks are unlawful. *Ledar*, 2004 WL 5249148, at *6 n.36. However, that conclusion does not impact the *Ledar* court's determination that the forced purchase of certain insurance products and truck repairs services violated § 376.12(i).

TransAm argues that summary judgment in its favor is warranted because plaintiffs cannot establish damages. The court agrees with TransAm that plaintiffs must ultimately prove actual damages at trial. "A carrier 'is liable for damages *sustained* by a person as a result of an act or omission of that carrier or broker in violation [of the regulations].'" *Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1325 (11th Cir. 2010) (emphasis in original) (quoting 49 U.S.C. §14704(a)(2)). The standard requires proof that plaintiffs sustained an injury as a result of TransAm's failure to comply with § 376.12. *See id.*

TransAm's argument is premature because actual damages are not a predicate for, or an element of, liability under 49 U.S.C. §14704(a)(2). *See Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 284 n.10 (N.D. Ill. 2005) (rejecting argument that a showing of sustained damages is a predicate for liability in a truth-in-leasing regulations case); *C.R. England*, 508 F. Supp. 2d at 981 ("Actual damages are not a predicate for, or an element of, *liability* under 49 U.S.C. § 14704(a)(2).") (emphasis in original).

Citing *Landstar* and *Owner-Operator Independent Drivers Association, Inc. v. Swift Transportation Co.*, 632 F.3d 1111 (9th Cir. 2011), TransAm contends that plaintiffs are unable to show actual damages as a matter of law. But TransAm's reliance on these cases is misplaced. In *Landstar*, the Eleventh Circuit Court of Appeals actually remanded the case for an evidentiary hearing because the owner-operators did not have an opportunity to prove whether they had sustained actual damages due to the motor carrier's failure to comply with § 376.12(d). *Landstar*, 622 F.3d at 1326. And in *Swift*, while the court found plaintiffs failed to show actual damages, the plaintiffs *only* argued that their damages were the amount of the motor carrier's undisclosed and undocumented mark-ups. 632 F.3d at 1122 ("Since the mere act of charging a mark-up does not violate the regulations, Plaintiffs cannot prove damages simply by showing that Swift sometimes charged more than its actual costs for

charge-backs."). Here, plaintiffs have not taken the same position with respect to damages—plaintiffs have not limited their damages to undisclosed and undocumented mark-ups. Thus, *Landstar* and *Swift* are inapplicable to this issue.

To show actual damages, TransAm asserts that "plaintiffs must show some difference between the amount charged by TransAm and a lower market rate." (Doc. 124 at 18.) However, TransAm cites no authority for the proposition that charging "market rates" is a defense to a truth-in-leasing claim.

Moreover, even if market rates are the benchmark, TransAm has failed to establish the market rate for a satellite communications service. TransAm offers the deposition of Murray Droescher, who testified that TransAm decided on the amount to charge its owner operators by looking to what TransAm's competitors charged for a satellite communications service. (Doc. 124-12 at 3.) TransAm determined this by talking to drivers who came from other companies and looking at materials other companies had published, although Mr. Droescher could not remember the identity of the drivers with whom he had spoken or the specific companies whose publishing materials TransAm had reviewed. (*Id.* at 4–6.) The court determines that TransAm has failed to establish that fifteen dollars per week is the market rate.

More fundamentally, TransAm's argument ignores that industry practice alone is not a defense to a truth-in-leasing claim: in fact, the regulations were enacted to protect owner-operators from this sort of behavior. The proper measure of damages is what is necessary to make plaintiffs whole—not simply the difference between TransAm's fifteen dollar charge and the "market rate," a rate which remains to be proven at trial. The court rejects TransAm's argument that plaintiffs will not be able to establish actual damages.

**IV. Plaintiffs Are Entitled to Discovery on Their Individual Claims**

-10-

Both plaintiffs and TransAm moved for summary judgment on the Satellite Fee, which was Count III of Plaintiffs' First Amended Complaint.  Count III was the only count the court certified for class-wide treatment.  However, TransAm also moved for summary judgment on plaintiffs' remaining individual claims, including bobtail insurance, physical damage insurance, breakdown insurance, buy-down insurance, rider insurance, pre-pass, fuel optimizer, hand-loading, and false advertising.  Plaintiffs filed a Rule 56(d) Motion to Stay Adjudication of Uncertified, Individual Claims Raised by Defendants' Motion for Summary Judgment (Doc. 128), requesting the court to stay adjudication and to permit additional discovery on their individual claims.  TransAm opposes plaintiffs' request.

Plaintiffs assert that they have not had a fair opportunity to complete discovery regarding the uncertified, individual claims in this lawsuit.  The court agrees.  The court first turns to the operative Scheduling Order entered on May 5, 2013, which stated:  "This Court has determined not to bifurcate discovery, but recognizes that the parties will concentrate their early discovery on the issues relating to class certification."  (Doc. 19 at 3.)  Second, the court looks to the Summary of Deadlines and Settings set forth in the Scheduling Order, which does not impose a deadline for completion of all discovery.  Instead, the Summary says such a date is "To be determined."  (Doc. 19 at 2.)  Further, the Summary states that "Early discovery" shall be completed on September 16, 2013, and that the dispositive motion deadline is "To be determined."  (*Id.*)  Plaintiffs claim that, in accordance with this language, they focused their discovery thus far in the case on issues relating to class certification.  The court finds that plaintiffs' interpretation is reasonable and that the expectation of the court and the parties was to focus discovery so far on class certification issues.

Plaintiffs have not yet conducted discovery on their individual claims.  Specifically, plaintiffs have not had the opportunity to conduct discovery on the merits of the other fourteen claims set forth by the named plaintiffs, nor have plaintiffs obtained any facts regarding seven of the nine uncertified

-11-

issues raised in TransAm's summary judgment motion (bobtail insurance, physical damage insurance, breakdown insurance, buy-down insurance, rider insurance, pre-pass, and hand-loading).  Plaintiffs have not conducted discovery related to the individual matters because, consistent with the terms of the Scheduling Order discussed above, plaintiffs' focus has been on class-wide discovery and seeking dispositive relief on the class-wide claim certified by the court.  Plaintiffs are entitled to conduct discovery related to their individual claims.  Fed. R. Civ. P. 56(d); *Valley Forge Ins. Co. v. Health Care Mgmt. Partners*, *Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010).

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Partial Summary Judgment on Liability on Count III (Doc. 121) is granted.

**IT IS FURTHER ORDERED** that plaintiffs' Rule 56(d) Motion to Stay Adjudication of Uncertified, Individual Claims Raised by Defendants' Motion for Summary Judgment (Doc. 128) is granted.  Accordingly, the court denies without prejudice TransAm's Motion for Summary Judgment (Doc. 123).

**IT IS FURTHER ORDERED** that the parties should contact the magistrate judge to set up a scheduling conference.

Dated this 27th day of April, 2015, at Kansas City, Kansas.

               s/ Carlos Murguia
               **CARLOS MURGUIA**
               **United States District Judge**